People v. Liddell-Neal Council Edwin Anderson Liddell-Neal The court in the belief that it was a mandatory sentence. And the statement is brief. It doesn't take issue with that. It argues that the judge thought he was imposing a discretionary sentence, but it does not dispute that if it were a mandatory sentence, our argument is correct that it couldn't be a proper sentence. That under Hosschildt, the 15-year add-on is unconstitutional and can't be applied. Now, we believe the judge imposed a mandatory, what he believed was a mandatory 21-year sentence, the minimum 6-year armed robbery class act sentence, plus the 15-year add-on for use of a handgun. The reason we believe that's what the judge did is that is exactly what the state argued in this report. It argued that a 15-year add-on was absolutely required and requested that the judge impose a sentence of 10 years for the armed robbery with minimum 15-year add-on for a total of 25. The judge imposed a 21-year sentence. As we argued in the brief, after Hosschildt, that 15-year add-on for the armed robbery was found unconstitutional. The appellate court has since held in the Coleman case that the Hosschildt rule still applies. And we await a decision in Kelly from the Illinois Supreme Court to determine if Coleman's interpretation remains correct. That argument being that the 15-year add-on was unconstitutional, if that is the case, then the judge's decision to impose a 21-year sentence, we believe it was mandatory, is improper. And this court will have to remand the case and re-sentence it. The argument about the sentencing issue relates into what is our second argument, which is ineffective assistance of counsel. It's our contention that Mr. Neal did not receive effective assistance of counsel at trial on two bases. First, that he should have made a motion to sever the charges. The armed robbery and the drug charge were not truly related to each other, and it was prejudicial for the jury to be put in a position to hear the evidence of the drug possession and the belief of the police that Mr. Neal was dealing with crack cocaine at the same time as making a determination about the facts of the armed robbery. And the second argument about ineffective assistance is that counsel admitted at the sentencing hearing that he did not know that the 15-year add-on could be applied to his client. He had never told Mr. Neal that he would be subject to potentially a mandatory 15-year add-on, that what he assumed would be a minimum 6-year sentence, in fact, was going to be a minimum 21-year sentence. Was there any plea negotiations? Would that make a difference? Well, I don't have any information on the record that there were plea negotiations. In any event, counsel acknowledged on the record that he was not aware of the 15-year add-on, and that meant he wasn't in a position to rebut anything the state argued about the application of that, to argue against it, to even make somewhat of the argument that we make in our brief. But more profound, I think, is the failure to move to sever the charges, because I think the prejudice that ignores in this situation where the jury is going to be put in a position where it has to hear police testimony that we believe that the amount of cocaine found near Mr. Neal, he wasn't actually found holding the drugs. He was picked up off the ground by officers, and they testify that bags of crack cocaine were found on the ground by him. But that amount was an amount associated with distribution, and therefore he was a drug dealer. It's fairly clear that information that someone's dealing crack cocaine on the street will not be well received by a jury that's trying to decide guilt or innocence of armed robbery. The next argument that we made that I'd like to talk about has to do with the overall fairness of the sentencing, and that is to say that if the state is correct that the sentence imposed in this case was a discretionary 21-year sentence, that is an obviously excessive sentence on a 17-year-old who has no prior criminal history, no past record of trouble with the police, with the law, and in a crime that involved really nothing more than the taking of a cell phone from a person on the street, a person who provided the court with his own recommendation that he hoped that the court would be very lenient in sentencing Mr. Neal due to his youth. Again, I don't believe that this was a 21-year discretionary sentence. I don't think the judge would have handed a sentence like that down, but if he did, if the state's correct, that sentence is clearly excessive given Mr. Neal's youth, and as a matter of law, it's an abusive discretion when a sentence is disproportionate to the nature of the offense, and as I say, we have here a street crime, the taking of a cell phone that was returned to the complainant within hours of the actual incident, 21 years. Well, we know his co-defendant took a shot at the – or at least there was evidence that he took a shot. Well, it didn't take a shot at the complainant. The complainant was not afraid. The complainant said that when he challenged the two kids as they were going away, the co-defendant, Mathis, turned and held a gun up and shot in the ear. He thought that that was just sort of a warning like, don't mess with me, and he was not frightened by it. I thought it was over his head, but your understanding of the record was it was straight up in the air. Well, not anywhere that the complainant felt fear of it, and his compatriots that were out on the street, one of them, as the evidence shows, followed them down the street at some distance and they kept an eye on them, so there didn't – I don't recall there being any argument that there was an intent to fire at – certainly there was no attempted murder or charge or anything like that. I think there was an act discharge filed on Mr. Mathis. The last argument I want to touch on, we feel like the court did not give enough attention – well, actually the court gave no attention to the pro se claim to be effective as a counsel. Mr. Neal sent a letter to his counsel saying, I don't trust you, I don't want you on my case anymore. He gave notice to the court that he had concerns, and he filed – attempted to file a pro se post-trial motion. The record shows that this clerk received it, didn't file it, and sent it back to the trial attorney. We don't know what was in that post-trial motion, but I think it doesn't restrain credibility to believe that there were complaints about counsel who we know defended directly, totally, completely as ineffective. Given this, given the standard that even vague claims are sufficient to require at least a preliminary investigation of a cranked up claim, the court should have at least asked some questions, and it didn't. In this circumstance, at the bare minimum, we believe this court should remand the case for that preliminary investigation of that war and crank-up requirement. That ineffective part you're talking about in the post-trial motion, which we didn't see, that applies primarily to the sentencing? Well, no, because that issue came up – the post-trial motion that counsel filed was heard at the sentencing hearing. Right. So whatever Mr. Neal's complaints about his attorney would have run through the trial, I assume. Something before that. Classic crankle war kind of things, witnesses that could have been called, things along that line. We don't know because, as I say, the record shows he tried to file a pro se motion and it wasn't filed. Your Honors, again, we ask that this court reverse the conviction on reasons of ineffective assistance to counsel and at the very minimum remand the case for resentencing. Thank you, Counsel. Counsel? Your Honors, Counsel, as to the first issue, a court has to have some basis that would trigger the necessity for an inquiry. And in this case, there was nothing before this judge that would trigger a necessity for an inquiry. A defendant has to make a sufficient factual allegation about ineffective assistance of counsel to trigger it and a bald allegation with no factual support is insufficient. And in this case, this is what we have. The defendant, after his conviction on December 2nd, sent the court a letter. And the letter said, however, I'm concerned and sincere about my freedom, my life, and my rights of a fair trial. There's no mention of counsel, no complaint about counsel in this letter to the court. This did not trigger any crankball inquiry. The defendant's second letter to the judge on January 7th, dated January 17th, simply stated, I'm writing this letter stating that I don't want Mike Burke to do anything further regarding my case. I wrote him a letter letting him know the same. But so he says, I don't want to have anything more to do with the case, but he doesn't make any complaint that counsel is ineffective, and he doesn't support it with any facts. So this also did not trigger any duty to make a crankball inquiry. At sentencing on January 29th at the hearing, he had an opportunity to address the court, and he did make no complaint about counsel at sentencing. So the court has nothing to base it on, nothing to necessitate to make a crankball inquiry. The only allegation of ineffective assistance of counsel that can be found is in the defendant's letter to defense counsel. Now, but is the court supposed to scour all of counsel's correspondence or a defendant's correspondence with counsel? There's no case holding that. And even in this letter, this is what the defendant said. Sir, I'm writing to inform you that your services are no longer needed. I believe you are incompetent and unconcerned in handling my case. That's it. There is no allegation of what the attorney did not do that he should have done, no facts on which even if the court was aware of this letter, nothing but a bald allegation, nothing that would require the court to make an inquiry. So for that reason, his complaint about the court and failing to inquire about it is not supported by the record. And as far as this motion that the defendant attempted to file, we don't have it, and I don't know the content. And you can't presume error on the lack of a record. The defendant has the burden to affirmatively show an error, and he fails to do so on his record. For that reason, this court should reject that. Now, as to the 15-year add-on under Housechild that has to do with the sentencing, Housechild was decided in 2007. The defendant was sentenced in 2010. Presumably, the court knew about Housechild and knew that the 15-year add-on had been declared unconstitutional. Now, there's nothing in the record, and the defendant will admit this, that affirmatively shows that the court applied the impermissible 15-year add-on. In fact, defense counsel, in arguing about it, says, wait a minute. Now, co-defendant got notice in his charging instrument that he was going to be subject to an add-on, but this defendant got no notice, so you can't apply it. So there's some indication that counsel was aware that at that point in time it was still being applied. Did the state argue that it should be applied? Yes, the state did. Should the state have known that it was unconstitutional or it was an improper sentence? You know, at this point in time, the legislature had gone back and fixed the logical problem with the armed violence statute. And people were, it was somewhat murky. I agree, and the state's attorney now agrees, that it would have been improper. But at that point in time, I don't think he was arguing anything in that faith. But he didn't acknowledge there was a dispute at this time or advise the court of this potential problem. It was just, he argued he wanted 15 more on anything the judge gave him. And he'd like to have 10, so it would have been 25. I truly think that he was making a mistake of law because of the way the armed violence statute had been fixed. And it solved the logical problem that had to do with the proportionate penalties problem. But it didn't. I'm not saying that he did it to mislead the court. Right. I'm saying he wasn't aware of it either. The state's attorney was not aware, no. But counsel argued that it should not apply because it didn't get noticed. Okay. And in any event, the court makes no mention. It's not in the charging instrument. And the court makes no mention of adding a 15-year add-on. He doesn't say, I'm sentencing you to six years under the armed violence statute and that I'm also applying a 15-year add-on. That is not in the record. All we have is a 21-year sentence, which is within the limit for armed violence, which is six to 30 years. And what the court commented on in sentencing was the seriousness of the crime and what could have happened and the fact that the defendant didn't cooperate with the pre-sentence investigation report and other items. And he was proper to weigh the seriousness of the crime more heavily than the defendant's youth. But he did acknowledge the defendant's age, and he did acknowledge that the victim had asked the court to consider the defendant's age. Are you familiar with the Kelly case that's before the Supreme Court? The counsel mentioned it, that there had been oral argument. Wasn't that the case you mentioned? Yes. That's okay. I should be a little more familiar with it myself, but I was wondering what the state's position on it was. Well, some months back I had been following the oral argument on it, and I'm only slightly familiar, and it might have some effect on Housetile. But it's not going to affect this particular case because the law at this time was that the 15-year add-on was unconstitutional, and the court would have been incorrect to do that. But on this record, this court has to presume that the judge knew the law that had been established since 2007, and we're here in 2010, and the judge makes no comment that he's applying this add-on. You have to presume the judge correctly applied the law unless there's some affirmative indication in the record to the contrary, and there simply isn't. And what the defendant is asking this court to do is really re-weigh what the court below weighed. He doesn't point to any improper factor that the court considered or any factor the court failed to consider. He can't do any of that. He's just asking this court to improperly re-weigh the sentence that this judge gave, and this court should not do that. Now, as to severance, in this case, it was proper to charge the armed robbery and the possession with intent to deliver in the same charging instrument. And if counsel had moved to sever, he wouldn't have succeeded because in this case, all of the action took place in around 10 minutes, a little over 10 minutes. The victim had walked out to take a telephone call, and he had been robbed at gunpoint. The co-defendant had placed the gun against his chest. I mean, this is, he should have been afraid. He wasn't, but he should have been. And they, he didn't have any money to give him, and they take his cell phone. He decides, the victim decides to follow the two boys so that, and ask him, you know, just, you know, it doesn't have any value, please give it back to me. They refuse, and the co-defendant shoots in his direction over his head, and, you know, he takes it as a warning shot. But perhaps the next shot, if he had taken another step, might have been a little lower. He was certainly willing to fire in the victim's direction. At that point, he decides to walk back, and he meets a companion, tells him what happened. The companion continues to follow the boys. He goes back to the house. The police arrive, and then there's a phone call from the friend who's following the two perpetrators. And let's just say the police very quickly apprehend these two. They order the two at gunpoint to, I mean, because they fire shots. And they order the two at gunpoint to lie down on their stomachs and stretch their hands up. But they hesitate. They think about whether they're really going to obey this direction. And then, finally, they do. And the defendant, this particular defendant, then takes his left arm down and begins to fiddle at his waistline, obviously trying to get something to dispose of him. And when they lift him up, they hold him. Okay. So we have this court's verdict that the conviction exists. Thank you. Counsel? Counsel? Your Honors. Counsel notes that Mr. Neal made no comments at the sentencing hearing about his displeasure with trial counsel. I can't stress enough that we're talking about a 17-year-old young man, a high school student, with no prior history of trouble with law, being in court. A 17-year-old in court to speak for himself would take an unusual man to be able to stand up at that point and address the judge and explain with clarity what it is he's upset about, particularly in an instance where we know that he mailed a pro se motion to court with some complaints in it. And for all he knew at that point, it was simply being ignored. What we know from the record is that it wasn't filed. I don't know why it wasn't filed, but it's not there. But we know from what is written on the copy of the envelope that's in the record is that it contained a pro se post-trial motion. And, again, I say, given what we know, he said to Mr. Burke in a letter about him being ineffective, it's pretty reasonable to assume he had complaints about counsel's preparation, the kind of complaints that would lead to a requirement for at least preliminary, frank investigation. The state acknowledges that the 15-year sentence is currently an improper sentence if it's given as a mandatory add-on. My question is simply, why is it a 21-year sentence if it wasn't 6 plus 15, given the nature of this offense and the youth of the defendant? 21 years is an extraordinary sentence for a first offender for this type of an offense, particularly where there weren't any findings by the court that this was an especially egregious crime. There's been no physical harm to anyone. Under those circumstances, I think it's reasonable to see that the judge heard the prosecutor's argument, believed he had a mandatory sentence that he had to hand down, and tacked on the 15 cents that was the minimum for the armed robbery. And because of that, that sentence needs to be vacated and the case needs to be remanded. The final point I'd address is the severance question. It's not simply a matter of whether the information about the drug offense would prejudice the defendant in relation to the trial on the armed robbery offense. There's also the question of having a fair trial on the drug offense. Police allege that this material was found on the ground by him when they took him into custody, and the officers testified that, from their experience, they believe that that was an amount that is a distribution amount, not a possessory amount. The jury evaluating that charge heard from witnesses that the man before them is an armed robber, that he was willing to hang out with another guy with a gun and steal property from someone. Could they make a fair judgment about the nature of the drug charge and whether or not he really is a drug dealer when they've heard this information about the armed robbery? I think a compelling argument about severance could be made in judgment. He well within his rights to have granted severance of those charges. And in this instance, we know that trial counsel did not attempt to make the motion. And that, combined with his lack of knowledge of the sentencing law, leads to the resolution that he was ineffective in this instance in denying the defendant a fair trial. So we would ask that this Court reverse the convictions or, short of that, bring down the case for resentencing. I appreciate the briefs and arguments of counsel to take the case under revising.